**Charles A. SEBER, Jr., Plaintiff,**

v.

**DANIELS TRANSFER COMPANY, a corporation, Robert Mervine and Charles Mervine, Defendants.**

**Civ. A. No. 84–104 ERIE.**

United States District Court, W.D. Pennsylvania.

Oct. 1, 1985.

Nancy Schultz, Oil City, Pa., for plaintiff.

John W. Beatty, Erie, Pa., for defendants.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiff filed this action in March 1984. The case was fraught with discovery disputes, but eventually came to trial by jury in late January and February 1985. Plaintiff alleged two causes of action: age discrimination under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 et seq., and wrongful discharge in that plaintiff was discharged from employment for reasons contrary to public policy. The jury returned a verdict for plaintiff only on the wrongful discharge count and awarded him $19,000 in compensatory damages and $16,250 in punitive damages.

Defendants have filed a motion for judgment notwithstanding the verdict on three grounds. First, Charles Mervine and Robert Mervine claim that plaintiff's action is barred against them as individuals by Pennsylvania's two-year statute of limitations for tort actions. Second, all defendants seek to have plaintiff's unemployment compensation set off against his award for compensatory damages. Third, defendant Daniels Transfer Company seeks to have the punitive damages award set aside for lack of evidence of outrageous conduct. Defendants also have filed a bill of costs, or alternatively, ask that each side be required to bear its own costs. Plaintiff has responded to defendants' motions and bill of costs and filed his own bill of costs.

## I. DEFENDANTS' MOTION FOR JUDGMENT N.O.V.

Defendants first obstacle in moving for judgment N.O.V., as plaintiff notes in

his opposing brief, is to satisfy the requirements of Fed.R.Civ.P. 50. Section (b) provides that the moving party must have moved for a directed verdict at the close of all evidence before the court can entertain a motion for judgment N.O.V. *See Mallick v. International Brotherhood of Electrical Workers*, 644 F.2d 228 (3d Cir.1981). Defendants did orally move to dismiss at the close of their case on January 31, 1985. We granted the motion as to all defendants except Daniels Transfer Company, Robert Mervine and Charles Mervine. We therefore find that defendants have properly preserved the merits of the statute of limitations argument raised in their motion for judgment N.O.V., to which we now turn.

## A. THE STATUTE OF LIMITATIONS

Charles Mervine and Robert Mervine contend that the action against them is barred by the Pennsylvania two-year statute of limitations for tort injuries. On its surface their argument has merit. Plaintiff filed his original complaint on March 30, 1984, concerning a job termination occurring April 1, 1982, barely within the limitations period. This complaint names only Daniels Transfer Company and plaintiff's Teamsters Local.[1] The Mervines were not named until plaintiff filed a motion to join parties and Second Amended Complaint on August 6, 1984. Soon afterward plaintiff moved to join another defendant and filed a Third Amended Complaint. Defendants raised their statute of limitations defense generally in their answer to this last amended complaint.

■■■ While we have no doubt that the Mervines were named beyond the two year deadline, we find that the statute does not bar their liability. Plaintiff may take advantage of Fed.R.Civ.P. 15 allowing relation back of amendments under certain conditions. Section (a) of Rule 15 requires us to freely grant amendments to serve justice. Rule 15(c) states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set

forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Plaintiff thus is entitled to have his August 6, 1984 second amended complaint relate back to his first, timely complaint if he shows both that the Mervines received some formal or informal notice of the suit by April 1, 1984 and that holding them liable is not otherwise prejudicial. The existence of prejudice is largely determined by two findings: whether the original party and the party added by amendment share an identity of interest, and whether the amendment was not unduly delayed. *See generally, Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470, 492 (3d Cir.1978); *Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir.1974), *cert. denied* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974) (amendment to add officers, directors, and shareholders permitted when they were active participants in events alleged as basis of suit and had constructive notice).

Daniels Transfer is a closely held corporation. Robert Mervine owns 100% of the stock and is an officer and director. Charles Mervine is Daniels' vice-president and chief operating officer and runs the day-to-day business. In the pleadings and testimony, nothing was as clear as the Mervines' control over all aspects of Daniels Transfer and related companies. Each must necessarily have had a role in either

---

**1.** The Union was voluntarily dismissed on July 16, 1984.

1314

making or approving the decision to close Daniels repair garage and lay off its employees, including plaintiff. When plaintiff sued Daniels within the limitations period, the Mervines certainly had constructive, if not actual, notice of his claim. This identity of interest is further supported by the fact that the same attorney represented all defendants; he accepted service for the later named defendants, including the Mervines. *Wong v. Calvin*, 87 F.R.D. 145, 150 (N.D.Fla.1980). Finally, we recognize that counsel underwent a contentious period of discovery during which it may have been difficult to identify all responsible parties and their positions. For reasons that should by now be obvious, plaintiffs should never wait until the eve of the limitations deadline to file suit. But plaintiff here may take advantage of a rule designed to prevent overly technical applications of the statute of limitations where it appears that responsible parties will not be unfairly prejudiced in defending against an otherwise untimely lawsuit.

## B. SETOFF OF UNEMPLOYMENT COMPENSATION.

■ Before reaching the merits of this issue, we must decide whether defendants properly preserved their right to file post-trial motions under Rule 50. Rule 50(a) requires specificity in motions for directed verdict, but failure to recite a classic motion for directed verdict is not instantly fatal to success in seeking judgment N.O.V. The rigidity of Rule 50 has been tempered by fairly liberal construction. When evaluating the sufficiency of language that by itself does not qualify as a valid prerequisite to a motion for judgment N.O.V., "the communicative content, 'specificity' and notice-giving function of an assertion should be judged in context." *Acosta v. Honda Motor Company, Ltd.*, 717 F.2d 828, 832 (3d Cir.1983). One important consideration is whether the court and opposing counsel are alerted in some way to the grounds of counsel's objections. *Abraham v. Pekarski*, 728 F.2d 167, 171 (3d Cir.1984).

■ Defendant's counsel did not specifically move for directed verdict on the issue of whether unemployment compensation should be set off against the damage award. Following our jury charge on damages, however, he did object to our decision not to address the issue in our charge. Prior to this objection, the court conducted three conferences concerning the damage phase of the trial: On January 31, 1985 immediately after the verdict on liability; on February 1, prior to taking testimony on damages; and on February 1 following testimony on damages and prior to the jury charge. Throughout these discussions the court repeatedly raised the issue of setoff of unemployment compensation. Transcript at 2, 7, 24, 31, 55, and 61. Because neither party provided us with conclusive authority at that time, we decided that any objections to our determinations should be addressed by post-trial motions. Transcript at 42, 44, and 48. We are certain that counsel for both parties knew the details of the dispute over this issue and the likelihood that post-trial action would be necessary to settle it. In this context, we find that defendants' objection to our jury charge adequately preserved his right to move for judgment N.O.V., despite his failure to move with specificity for directed verdict.

Defendants argue that we should set off from plaintiff's award the unemployment compensation he received between the time of his layoff and the date he began his new job in Florida. Defendants refer us to ADEA cases, arguing by analogy that these cases govern our decision here. Plaintiff similarly attempts to argue by analogy. He cites an informative Title VII opinion which illustrates the recency and difficulty of this issue. *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77 (3d Cir.1983) offered the first opportunity for the Court of Appeals for the Third Circuit to address the set off of unemployment benefits from Title VII back pay awards. The majority acknowledged a split among the Circuits on the issue, which it described as "extremely close and one over which reasonable persons could differ." 721 F.2d 82. Relying

heavily on statutory language, the majority decided that the trial court's setoff was improper. Judge Seitz would have held to the contrary, explaining his position in a well-reasoned dissent.

We have found these references enlightening but not controlling. For while plaintiff initially relied on a federal statute to invoke this court's jurisdiction, he of course prevailed only on the state law claim of wrongful discharge. Pennsylvania law thus governs our decision.

■■■ We find this question particularly difficult because it calls into play two competing principles of tort recovery, mitigation of damages and the collateral source rule. According to the collateral source rule, a tort victim is entitled to damages caused by a tortfeasor regardless of compensation the victim receives from other sources. *Boudwin v. Yellow Cab Co.*, 410 Pa. 31, 188 A.2d 259 (1963). The rule typically operates to block introduction of evidence that a plaintiff has received insurance benefits which a defendant will argue compensate him for his injuries. On the other hand, a plaintiff cannot recover for damages which he reasonably could have avoided. We think this rule applies particularly to wrongful discharge suits because a reasonable course of mitigation is easier to ascertain than in a case where the plaintiff suffers physical injury. There is no question of judgments of physicians or conflicting medical evidence; plaintiff here simply must diligently look for work. Furthermore, the lure of a guaranteed stream of unemployment benefits may invite a plaintiff to purposely delay his job search until his benefits expire.

Our preliminary inquiry produced three Commonwealth Court decisions which specifically permit the setoff of unemployment compensation from back pay awards. *Bellefonte Area School District v. Lipner*, 81 Pa.Cmwlth. 334, 473 A.2d 741 (1984); *Pennsylvania Labor Relations Board v. Stairways, Inc.*, 56 Pa.Cmwlth. 462, 425 A.2d 1172 (1981); *Shearer v. Pennsylvania Secretary of Education*, 57 Pa. Cmwlth. 266, 424 A.2d 633 (1981). These cases are distinguishable, however, in that they involve statutory or contractual damage provisions.

We believe that the controlling precedent is *Lobalzo v. Varoli*, 409 Pa. 15, 185 A.2d 557 (1962). In *Lobalzo*, the plaintiff was injured in a truck accident. At trial, defense counsel made known to the jury that the plaintiff had collected workmen's compensation and unemployment compensation. The Pennsylvania Supreme Court reversed and granted a new trial for this error. See also, *Feeley v. United States*, 337 F.2d 924 (3d Cir.1964). Defendants thus are not entitled to a setoff of plaintiff's unemployment compensation from his damage award.

## C.  PUNITIVE DAMAGES

■■■ Defendants moved for judgment N.O.V. on the punitive damage award alleging that plaintiff offered no proof of outrageous conduct. While we found that defendants' other argument qualified for a narrow exception to Rule 50(b), this one does not. The topic of punitive damages was raised repeatedly during the three conferences of counsel during the damage phase of trial. Defendants' counsel never specifically objected to our decision to charge on punitive damages. See Transcript at 42, 53, 60, and 62. His few remarks suggest that he accepted our decision. *See Bonjorno v. Kaiser Aluminum & Chemical Corporation*, 752 F.2d 802, 815 (3d Cir.1984). In addition, while he did specifically object at the conclusion of our jury charge to our failure to charge on the two issues discussed above, he made no reference to punitive damages. Finally, neither of his two supporting briefs address the topic. He did raise the issue in his points for charge on damages. But unlike the issues above, the context of our discussion with counsel over the question does not raise it to the level where it would qualify as a substitute for a motion for directed verdict.

## II.  COSTS

Under Fed.R.Civ.P. 54(d) "costs shall be allowed as of course to the prevailing party

**1316**

unless the court otherwise directs." The dispute here is over which party prevailed. Each side has filed a bill of costs. Defendants argue that plaintiff could not have sued in federal court but for the federal age discrimination claim on which most of the effort in preparing for trial was expended. Since the jury found for defendants on this claim, they contend that they have prevailed.

This argument is factually and legally unsupported. Plaintiff amended his complaint on January 24, 1985 to allege diversity jurisdiction. His right to sue in this court did not rest entirely on the federal question presented by the ADEA count.

Even though plaintiff was unsuccesful in pursuing the ADEA claim, this would not establish defendants as the prevailing parties for the purposes of awarding costs. This trial was not complex; it involved two counts. Plaintiff succeeded on one of the two counts and was awarded $19,000 in compensatory damages and $16,250 in punitive damages. Defendants received no award. While our research did not reveal any direct authority from the Court of Appeals for the Third Circuit, we have little hesitation in holding that plaintiff need not succeed on every count to be considered the prevailing party in this case. *See Hines v. Perez,* 242 F.2d 459, 466 (9th Cir.1957); *see generally, Lacovara v. Merrill Lynch Pierce Fenner & Smith,* 102 F.R.D. 959 (E.D.Pa.1984). Having settled this question, actual taxation of costs shall be referred as always to the Clerk.

### ORDER

In accordance with the foregoing Opinion, Defendants' motion for judgment N.O.V. is DENIED. Costs shall be awarded to plaintiff and denied as to defendants.